[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The parties were married on May 22, 1983 in Guilford, Connecticut. By complaint dated June 3, 2002, the Wife instituted this action claiming a dissolution of marriage, equitable distribution of all real and personal property, alimony, counsel fees, and other relief as law and equity might provide.
One child was born issue of this marriage: Sarah born on May 2, 1984. Sarah is now over the age of eighteen, however, she is under the age of 23 years and in her first year of college. Presently she is a full tuition scholarship student at Southern Connecticut State University. She is maintaining the academic requirements for the continuation of the scholarship. The scholarship pays for tuition only, not books or room and board. Sarah lives with her mother and works part time.
The Husband is age 47 and in good health. The Wife is age 55 and testified that she is in poor health. She has diabetes, which may soon require her to become insulin dependent. She has numerous other medical conditions which she testified impact on the type of employment she can perform, however, no evidence was presented in regards to same.
When the parties were first married, the parties made the decision that the Wife would remain at home, caring for the home and the child. At that time she was a federal government employee, not eligible to accumulate social security quarters. When she stopped working for the federal government, she withdrew her retirement monies of approximately $10,000.00, which the parties used for household purposes. She has not worked full time or part-time with any consistency since the marriage. She does not have marketable job skills. She graduated from high school and has no further training. She is presently working 32 — 35 hours per week earning $9.00 per hour at a car dealership making phone calls.
The Husband is a school custodian in Clinton and, up until recently, worked an additional job at McDonalds. In October, the Husband broke his CT Page 1260 arm roller blading. He has not fully returned to the McDonald's job, which he has had for the past 10 years. There was contrary evidence presented to the court as to whether or not the Husband can return to McDonalds and whether or not his previous hours remain available to him.
The cause for the breakdown of the marriage lies with both parties. For the past 10 years, at the request of the Wife, the Husband has been sleeping on the downstairs couch due to a snoring problem. The Husband claims that the stress of working, two jobs, each day from 5:30am to 8:00pm has been too much for him and that the stress has led to bursts of temper. The parties have incurred debts, which are in large part the result of the Wife's spending. The parties have also saved no money. The Wife was in charge of the family's finances.
The Husband has met someone whom he admitted to platonically loving. The Wife finds this to be a betrayal of the marital vows.
All of the other circumstances of the character of the parties were discovered after the dissolution was commenced and therefore were not the cause of the breakdown of the marriage.
The Court finds that residence requirements have been satisfied and neither party has been the recipient of public assistance. All pertinent criteria outlined in Chapter 815j of the General Statutes were considered by the court in the entry of the following orders as well as the evidence, testimony and claims of law made by the parties:
ORDERS:
 DISSOLUTION OF MARRIAGE
A decree dissolving the marriage on the grounds of irretrievable breakdown shall enter on January 23, 2003.
ALIMONY
The court finds based upon the evidence and testimony presented at trial that the Husband's earning capacity is indicated by the financial affidavit he presented to the court dated August 22, 2002. This was presented to the court prior to the Husband's recreational injury. There was conflicting testimony as to whether or not the hours which the Husband was working at McDonalds in August of 2002 remain available to him. The August 2002 hours at McDonalds are less than he has historically worked with McDonalds (see Plaintiffs exhibits 8, 9 and 10). CT Page 1261
The court also finds based upon the evidence and testimony presented at trial that the Wife's gross earning capacity is $15,000.00 annually, which is her present income.
Based upon the above findings, the Husband is ordered to pay to the Wife periodic alimony of $300.00 per week for a period of 10 years from the date of the dissolution, (until January 24, 2013) non-modifiable as to term unless the sooner happening of one of the following: the Wife's death, the Husband's death, the remarriage of the Wife or cohabitation by the Wife as defined by statute.
An immediate income withholding is ordered to secure the payment of this order.
(NOTE: With the orders below for additional alimony of $53.00 per week for COBRA costs and $32.00 for CCCS of SNE, the total amount of alimony to be paid is $385.00 per week. This total amount can change if the weekly payment to CCCS of SNE changes and will also change when the cost of COBRA or the cost of the Wife's insurance changes.).
Thereafter, the Husband is ordered to pay to the Wife periodic alimony in the amount of $1.00 per year for life (unless the Husband has died, or the Wife has died, remarried, or cohabitated as defined by statute).
The Wife may be entitled to elect to receive her share of the Husband's Social Security Benefits. Due to her lump sum payment from the federal government of her retirement funds in 1983, the Wife shall receive a reduced amount of monthly Social Security Benefit payments. Therefore, the Wife at that time may petition the court for a modification of her order of $1.00 per year order.
PUBLIC ACT REGARDING HIGHER EDUCATION
The court finds, based upon the testimony of the parties, it is more likely than not, that if the parties had remained an intact family, that they would have provided for the post secondary education of their daughter. Therefore, pursuant to Public Act 02-128, the parties are to equally share the cost of the child's post secondary education.
MEDICAL/DENTAL INSURANCE — WIFE
The parties shall be equally responsible for the cost of the Wife's COBRA cost for her medical and dental insurance, said total cost is presently $460.12 per month (or $106.26 per week). The Wife shall be solely responsible for the unreimbursed medical and dental expenses CT Page 1262 incurred by her.
If medical insurance becomes available to the Wife through her employment and if it is comparable for her present insurance in benefits and if it is costs less then the COBRA cost, then, the parties shall equally share the cost for said insurance for the same period of time which the Wife would have been entitled to COBRA benefits under the Husband's policy. Thereafter, the Wife shall be solely responsible for the cost of her insurance.
The payment of this amount shall be by way of an order for additional alimony and shall be secured by an immediate income withholding. The Wife shall be solely responsible for the actual payment for the medical insurance.
LIFE INSURANCE
The Husband shall maintain his present life insurance policy, through his employment, with the Wife as the beneficiary for as long as he is obligated to pay alimony. He shall provide proof to the Wife of his compliance with this order annually.
PERSONAL PROPERTY
The parties have, to their mutual satisfaction, divided their personal property.
REAL PROPERTY
The Wife is presently the sole owner of the marital real estate located at 274 Church Street, Unit 6B, Guilford, Connecticut. The parties jointly purchased the property but later placed the property in the Wife's name to protect the property from any lawsuits. The Wife testified that the value of the property is $98,000.00. There is a mortgage on the property in the approximate amount of $70,000.00 in the names of both parties.
The Wife shall continue to have exclusive use and possession of the property. She lives there with the parties' daughter, who is expected to graduate from college in three years (May of 2006). The Wife shall be solely responsible for all costs associated with the property, including, but not limited to monthly mortgage payments, taxes, condominium fees and assessments and maintenance and upkeep.
On July 1, 2006 the property shall be immediately listed for sale with a licensed real estate agent. If the parties are unable to agree upon a CT Page 1263 listing price, the price shall be determined by the real estate agent. After payment of all the standard and usual closing fees, including but not limited to the payoff of the first mortgage, real estate commission and conveyance taxes, the remaining equity, if any, shall be used as follows:
 (1) The following debts of the parties shall be paid in full (the amount of the remaining balance after the parties have made their payments pursuant to the orders contained herein):
a. The debts included in the CCCS of SNE account:
(1) Two Providian National Accounts;
(2) Capital One services;
(3) GECC — J.C. Penny;
(4) Filenes;
(5) Discover Card;
(6) Four Lane Bryant Accounts; and
 (7) Any outstanding service charges and bills payable through CCCS of SNE.
b. Sears Account (at time of dissolution $2,479.00).
(2) the remaining equity, if any, shall be equally divided between the Husband and the Wife.
DIVISION OF DEBTS
The Husband shall be responsible for the following debts:
(1) The Discover Card debt which was withdrawn from the CCCS of SNE due to the nonpayment by the Husband of the order for him to pay CCCS of SNE;
(2) The JC Penny debt which was withdrawn from the CCCS of SNE due to the nonpayment by the Husband of the order for him to pay CCCS of SNE.
These bills shall be the sole responsibility for the Husband to pay and he shall indemnify and hold the Wife harmless in regards to same. CT Page 1264
If the Husband is able to work out a monthly repayment with the creditors of these 2 bills, said monthly payments shall be his sole responsibility. If there is a balance remaining on these 2 bills at the time of the sale of the property as ordered herein above, then that balance shall be paid off in frill from the proceeds of the sale as stated above.
If the Wife and the Husband are able to reinstate these two bills into CCCS of SNE, they are ordered to do so, then the payment of these bills shall be as stated below with the other bills in CCCS of SNE.
The Husband and the Wife shall equally pay the weekly payment to CCCS of SNE. The payment of this amount shall be by way of an order for additional alimony and shall be secured by an immediate income withholding. The Wife shall be solely responsible for the actual payment to CCCS of SNE.
The Wife shall be solely responsible for the debt to Sears in the Amount of $2,479.00 and to Catherine Scalzo and she shall indemnify and hold the Husband harmless in regards to same. At the sale of the real property, the balance of the Sears bill after the Wife has made monthly payments, shall be paid in full. The debt to Catherine Scalzo shall not be paid from the proceeds of the sale.
SOCIAL SECURITY, RETIREMENT PLANS, 401K PLANS, BANK ACCOUNTS
The Husband has a 401K with McDonalds in the approximate amount of $2,599.00 and a retirement plan with the Clinton School System, a Non-Certified Personnel Defined Benefit Pension Plan (hereinafter referred to as the Plan).
The Husband shall retain the 401K free and clear of any claim by the Wife.
The Wife shall receive 50% of the marital portion of the Husband's interest in the Plan. The "Martial Portion" shall be defined as a fraction. The numerator of said fraction shall be the total number of months of credited service earned by the Husband while married to the Wife; the denominator of said fraction shall be the total number of months of credited service earned by the Husband as of the date the Husband's benefits commenced. This fraction shall then be multiplied by the Husband's benefit calculated as of the Husband's commencement date. The parties were married on May 22, 1983 and the date of the dissolution of marriage is January 23, 2003. CT Page 1265
The Wife shall be named the Husband's pre-retirement surviving spouse up to the full amount of the benefits assigned herein, if the plan so permits, and if such a designation is necessary to assure the payment of benefits to the Wife in the event of the Participant's pre-retirement death.
If permitted by the rules of the Plan, the Wife's benefits shall be actuarially adjusted to be paid over her lifetime, and to commence any time after the Husband's earliest retirement age. In such an event, rather than basing the benefit on the date benefits commence to the Husband, they will be based on the date benefits commence to the Wife.
The court orders that, if necessary, a QDRO shall accomplish this division. Said QDRO shall be drafted by the Wife's attorney or other qualified person. The cost for same shall be paid equally by the parties. The court retains jurisdiction to ensure that this order is effectuated.
Each party shall retain the bank accounts as listed on their financial affidavits.
ATTORNEY FEES
The parties shall each be solely responsible for their own attorney fees.
TAX RETURNS
The parties shall file separate tax returns for the year 2003 and thereafter. In the past the parties have filed joint income tax returns. If there is any liability, cost or penalty associated with the previous fillings of joint income tax returns, the party responsible for the penalty shall be solely responsible for same and indemnify and hold the other party harmless from same.
MOTOR VEHICLES
The parties shall be entitled to their respective motor vehicles and be solely responsible for any loans on their respective automobile and indemnify and hold the other party harmless in regards to same.
MISCELLANEOUS
Each party shall sign any necessary documents to effectuate the orders contained herein.
___________________ FRANKEL, JUDGE. CT Page 1266
[EDITORS' NOTE: This page is blank.] CT Page 1267